UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JERMAINE CRADDOCK, | ) |
|     Plaintiff, | ) |
| v. | ) No. 17 C 7327 |
| RANDY S. PFISTER, JOHN BALDWIN, TRACY ENGLESON, and DARRIN HUNTER, | ) Judge Sara L. Ellis |
|     Defendants. | ) |

**OPINION AND ORDER**

Plaintiff Jermaine Cradock, a prisoner currently incarcerated at Illinois River Correctional Center, brings this lawsuit pursuant to 42 U.S.C. § 1983 challenging the conditions of confinement he experienced during several temporary detentions at Stateville Correctional Center's Northern Reception and Classification Center ("NRC") between 2015 and 2017. He brings suit against Defendants Randy S. Pfister, former NRC Warden; John Baldwin, former Illinois Department of Corrections ("IDOC") Acting Director; Tracy Engleson, former NRC Superintendent; and Darrin Hunter, current NRC Superintendent. Craddock argues that Defendants were aware of unconstitutional conditions at the NRC—specifically a systemic mice infestation—and failed to take reasonable remedial measures. Defendants now move for summary judgment. Because Craddock need not prove "significant physical injury" to survive summary judgment and there are questions of fact as to deliberate indifference, the Court denies Defendants' motion for summary judgment.

**BACKGROUND**[1]

**I.      Facts**

In temporary stretches lasting from a few weeks to several months, Craddock spent approximately one year total at the NRC between 2015 and 2017.  The NRC is, among other things, a short-term correctional facility for prisoners awaiting court appearances in northern Illinois.  While incarcerated at the NRC, Craddock saw mice every day.  He did not suffer a physical injury from the mice, although a mouse once touched his feet.  The mice did not inhibit his ability to sleep or eat.

In 2016, Craddock filed and appealed one grievance about the mice.  In that grievance, Craddock complained that he received discipline for putting a towel under his door to keep mice out of his cell.  Craddock filed four other mice-related grievances.[2]  At least ten other NRC prisoners complained about rodents between 2015 and 2017.

Critter Ridder, Inc. provided pest control services to the NRC between 2015 and 2017, spraying for pests twice a month.  Critter Ridder employees gave glue traps to prisoners and guards.  Under the pest control contract, Stateville rather than Critter Ridder was responsible for closing holes or gaps in its buildings that might allow rodent ingress.

---

[1] The Court derives the facts in this section from the Joint Statement of Undisputed Material Facts.  The Court takes all facts in the light most favorable to Craddock, the non-movant.  The parties filed their Statement of Facts, exhibits, and portions of briefs under seal, also providing redacted versions of the briefs.  When the Court refers to a sealed document, it attempts to do so without revealing any information that could reasonably be deemed confidential.  Nonetheless, if the Court discusses confidential information, it has done so because it is necessary to explain the path of its reasoning.  *See City of Greenville v. Syngenta Crop Prot., LLC*, 764 F.3d 695, 697 (7th Cir. 2014) ("[D]ocuments that affect the disposition of federal litigation are presumptively open to public view . . . unless a statute, rule, or privilege justifies confidentiality." (citation omitted)); *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000) (explaining that a judge's "opinions and orders belong in the public domain").

[2] The parties' Joint Statement of Facts contains the contradictory statements that (1) Craddock filed (and then appealed) only one mice-related grievance (Doc. 141 ¶ 5) and (2) he filed four additional mice-related grievances (Doc. 141 ¶ 39).  This inconsistency is not material to the Court's analysis.

Defendant Baldwin served as acting Director of IDOC for the relevant time period and had responsibility for NRC management, including oversight of health, safety, and sanitation. Craddock's only contact with Baldwin was the appeal of his grievance, the denial of which has Baldwin's signature. Baldwin testified that his delegate reviews and signs grievance appeals. Baldwin further testified that many large institutions, including Stateville, had rodents or birds, explaining, "It's very hard for a large operation to remain pest free every day of the year." Doc. 141 ¶ 136.

Defendant Pfister was the Stateville Warden, with responsibility for overall operations including safety and sanitation during the relevant time period. Craddock had one brief personal contact with Pfister. Pfister also testified that he saw mice or rodents at the NRC from 2015 to 2017, and that he received emails as well as monthly safety and sanitation reports flagging pest control problems at the NRC.

Defendant Engleton was NRC Superintendent from approximately 2000 to December 2015. Engleton testified that she exchanged emails about rodents at the NRC and saw dead mice. Defendant Hunter became NRC Superintendent in January 2016 and continues to hold that position. Hunter testified that he saw mice in the NRC cell houses and remembers grievances about the mice. Hunter further testified that when he received those grievances, he would note the areas for the exterminator or determine the exterminator's next scheduled visit. Craddock did not have any contact with Engleton or Hunter.

## II. Expert Testimony

Debra Graham, Craddock's expert on conditions of confinement, is familiar with correctional standards for pest control and the practical implementation of effective pest control measures in correctional facilities. Graham opines that there was a serious rodent infestation at

the NRC during the period of 2014 to 2017, and that Defendants had notice of this infestation and did not take reasonable measures to avoid or remediate the problem. She further opines that a rodent infestation at the NRC creates a very serious risk of disease and other health problems for inmates and staff. Reasonable measures to control pest infestation, in Graham's opinion, include: formulating and executing an integrated pest management plan; monitoring for the presence of pests, which includes inspecting facilities for potential pest ingress points; repairing such holes; overseeing outside vendor pest control contracts; implementing habitat modification measures such as sanitation; and conducting direct population control through trapping and baiting with toxicants.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine dispute of material fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, documents, answers to interrogatories, admissions, stipulations, and affidavits or declarations that are part of the record. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). The Court must construe all facts in the light most favorable to the non-moving

party and draw all reasonable inferences in that party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013). However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture,'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted).

## ANALYSIS

To succeed on an Eighth Amendment challenge to conditions of confinement, the prisoner must show the denial of "basic human needs" or "the minimal civilized measure of life's necessities," and that such infliction was deliberate, "which means that the defendant must have committed an act so dangerous that his knowledge of the risk can be inferred or that the defendant actually knew of an impending harm easily preventable." *Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir. 1996) (citations omitted).

### A. Objectively Serious Conditions of Confinement

To prevail, Craddock must demonstrate that his conditions of confinement created "objectively serious" deprivations. *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008). Defendants argue that, although Craddock saw mice every day at the NRC, this alone does not rise to the level of a constitutional violation because Craddock did not suffer significant physical harm. Craddock contends that his claim does not require a showing of serious physical harm and that evidence of a long-term pest infestation creates a triable issue.

To succeed on his § 1983 claim, Craddock must prove an injury in addition to causation. *Gray v. Hardy*, 826 F.3d 1000, 1006 (7th Cir. 2016). He "must do more than demonstrate a triable issue of fact with respect to the conditions he faces; he must also show that he suffered

5

some cognizable harm from the overall lack of a sanitary environment, and that [prison officials'] deliberate indifference caused that harm." *Id.*; *see also Silva v. Pfister*, No. 18-CV-5214, 2021 WL 1103483, at *5 (N.D. Ill. Mar. 23, 2021) ("A § 1983 plaintiff must also demonstrate injury and causation[.]").

Defendants argue that *Sain* requires significant physical harm for a pest-infestation complaint to create unconstitutional conditions. In *Sain*, the court explained that seeing several cockroaches and being bitten twice did not rise to the level of other cases, including *Antonelli*, where "a prolonged pest infestation" and "significant physical harm" "distinguished [the] case from the typical pest-infestation complaint." 512 F.3d at 894 (quoting *Antonelli*, 81 F.3d at 1431) (internal quotation marks omitted)).

However, in a case decided after *Sain*, the Seventh Circuit, in *dicta*, explained that allegations of physical injury are not necessary for a conditions of confinement case and then enumerated the kinds of harm that could be alleged: physical, psychological, or "hazard," *i.e.*, future harm. *Thomas v. Illinois*, 697 F.3d 612, 614–615 (7th Cir. 2012). As the plaintiff, Craddock can try to prove his case under any of these three theories. If he was seeking compensatory damages for emotional harm, he would have to provide proof of physical injury. *Byrd v. Hobart*, 761 F. App'x 621, 623 (7th Cir. 2019). But that is irrelevant here because the Court previously struck Craddock's compensatory damages claim. Doc. 58.

Craddock does not claim any physical injury from the mice and the presence of mice did not interrupt his ability to eat or sleep, although he saw mice in his cell every day and a mouse once touched his foot. Doc. 141 ¶¶ 1–2. Graham, Craddock's expert, provides information about the diseases carried by rodents and potential health risks, which could potentially support a

6

theory of future harm.[3] As for psychological harm, as the Seventh Circuit has explained, "[t]he potential psychological harm from living in a small cell infested with mice and cockroaches is pretty obvious." *Thomas*, 697 F.3d at 615; *Gray*, 826 F.3d at 1009 ("[T]he risk of both physical and psychological harm is obvious—children are taught the importance of washing their hands before kindergarten, and the repulsive nature of cockroaches and mice is hardly subject to dispute."). The Court makes no finding as to the sufficiency of Craddock's evidence; rather, the Court cannot agree with Defendants' position that, as a matter of law, Craddock must show "serious physical injury" for a conditions of confinement claim.

Craddock argues that evidence of a long-term pest infestation is sufficient to establish a triable issue of fact, citing *Silva*, 2021 WL 1103483. But that was not *Silva*'s reasoning. In *Silva*, the district judge determined the conditions complained of—insect infestation, feces and mold in the cell, bird droppings, broken windows, and failure to provide cleaning supplies—were "practically identical" to the conditions determined to be unconstitutional in *Gray v. Hardy*, 826 F.3d 1000 (7th Cir. 2016). 2021 WL 1103483, at *5–6. The Court in *Silva* did cite *Sain* and *Antonelli* for the Seventh Circuit directive that "a prolonged pest infestation, specifically a significant infestation of cockroaches and mice, may be considered a deprivation sufficient to constitute a due process violation." *Id.* at *5. Graham, Craddock's expert, characterizes the NRC as having a serious rodent infestation over a period of years that was never properly addressed, and Craddock presents evidence of other inmate complaints and internal NRC reports repeatedly flagging the infestation and unsanitary conditions. There is also evidence that an

---

[3] To prevail at trial on a theory of future harm, Craddock will need expert evidence to show to a reasonable degree of medical certainty that he faced increased risk of injury because of the pest infestation. *See Byrd*, 761 F. App'x at 623–624 (explaining, "[t]o withstand summary judgment on this type of claim, an inmate must show to a degree of reasonable medical certainty that he actually faced an increased risk of injury," and, although allowing the *pro se* litigant to continue, noting "the need for expert medical evidence to resolve" his claims (citation omitted) (internal quotation marks omitted)).

exterminator sprayed for pests twice a month, and that the exterminator handed out glue traps to prisoners and staff. Construing the facts in Craddock's favor, the Court finds a disputed question exists as to the seriousness of the conditions created by the mouse infestation.

### B. Deliberate Indifference

Defendants also argue that Craddock cannot prove deliberate indifference because they were not personally involved and took reasonable measures to address the mouse infestation issue. Defendants further argue that Craddock does not provide evidence of what additional steps he contends they should have taken. Craddock counters that Defendants turned a blind eye to a systemic pest infestation and the jury should decide the reasonableness of their remediation efforts.

A plaintiff cannot base a claim against a supervisory official on *respondeat superior* liability; instead, § 1983 requires the personal involvement of each Defendant. *See Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014) (stating that § 1983 requires personal involvement in alleged constitutional violation); *Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002) (explaining that *respondeat superior* theory of liability is not available under § 1983). "[T]o be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (citation omitted) (internal quotation marks omitted). Personal liability exists where the conduct occurred at the defendant's direction or with his or her knowledge and consent. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). In other words, he "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id.* (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)).

Craddock has provided sufficient evidence to create a question of fact as to Defendants Pfister, Engleson, and Hunter's direct personal knowledge of the pest infestation and the steps they took to address it. As Warden, Pfister saw mice in the facility, received monthly safety and sanitation reports confirming pest problems, received emails about infestations, knew prisoners were requesting glue traps, and spoke with Craddock about the issue. Pfister also had responsibility for overall operations at the NRC, including safety and sanitation. Although Pfister disclaims knowledge of specific prisoner grievances, Craddock has marshalled sufficient evidence to create a question as to Pfister's knowledge and his lack of action. Similarly, Craddock provides evidence that Engleson and Hunter, as superintendents with direct responsibility for facility operations, knew about the mice and took minimal measures to solve the problem.

Craddock also presents evidence that Acting Director Baldwin knew, generally, that correctional facilities often have pest problems and even about rodents at Stateville. Although Baldwin (like Pfister) does not review individual prisoner grievances and disclaims knowledge of or responsibility for pest infestation problems, a senior official like a director or warden, "could be expected to have 'personal responsibility' for resolving" a systemic problem like a pest infestation. *Silva*, 2021 WL 1103483, at *7 (quoting *Antonelli*, 81 F. 3d 1428–29). Craddock presents safety and sanitation reports, as well as expert testimony and prisoner complaints, to demonstrate a systemic pest problem. This is sufficient to survive summary judgment. *See id.* (denying summary judgment on systemic conditions claim).

Defendants alternatively argue that, because they contracted with an exterminator to spray twice a month, they cannot be considered deliberately indifferent as a matter of law. However, Craddock provides evidence that the problems continued throughout the period and

9

further provides expert testimony detailing other remedial measures (including patching building holes) that officials should have tried. "Knowingly persisting in an approach that does not make a dent in the problem is evidence from which a jury could infer deliberate indifference." *Gray*, 826 F.3d at 1009; *Hardy v. Godinez*, No. 12 C 6033, 2017 WL 2569605, at *10 (N.D. Ill. June 12, 2017) (fact questions regarding efforts and efficacy precluded summary judgment). The reasonableness of Defendants' actions is more properly a jury question. *See Santiago v. Rabideau*, No. 15 C 1856, 2019 WL 1747361, at *13 (N.D. Ill. Apr. 18, 2019) ("Courts in this Circuit have held that a jury should determine whether individuals in positions like that occupied by Warden Williams in this case took reasonable steps to address the adverse conditions in F-House sufficient to insulate them from liability.") (collecting cases). Thus, the Court denies summary judgment on this basis and finds that Craddock's claim must proceed to trial.

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion for summary judgment [139].

Dated: May 11, 2022

SARA L. ELLIS
United States District Judge